**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| R'KES STARLING, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br>   v.<br><br>IRON HAMMER ROOFING, LLC,<br><br>            Defendant. | Case No.<br><br>**3:26-CV-2653**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

**Preliminary Statement**

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls.

3.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response

to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5. Plaintiff R'Kes Starling ("Plaintiff") brings this action under the TCPA alleging that Iron Hammer Roofing, LLC ("Defendant") called the Plaintiff, whose number is on the National Do Not Call Registry~~, including some calls which utilized illegal prerecorded messages~~. Those calls were made without the call recipient's prior express written consent.

6.      Because the calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing calls.

7.   A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

8.   Plaintiff is an individual who resides in Texas.

9.   Defendant is a corporation headquartered Dallas, Dallas County, Texas which is located within this District.

## Jurisdiction & Venue

10.      The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11.      Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this District.

## The Telephone Consumer Protection Act

12.      In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

13.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

14.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

15.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.

16.     The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

17.     The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

18.     The regulations also require any caller identification information to "include either CPN or ANI" and "permit any individual to make a do-not-call request during regular business hours." *Id.*

19.     A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v.*

*Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

The Texas Business and Commerce Code

20.     Realizing the particular harm to Texas residents that unsolicited telemarketing calls to them poses, the Texas Legislature passed Section 302.101 of the Texas Business and Commerce Code, which requires all "sellers" or "salespersons" making "telephone solicitations" inducing a person to "purchase, rent, claim, or receive an item," to register as such with the Texas Secretary of State. TEX. BUS. & COM. CODE §§ 302.001; 302.101.

21.     Under the Code, a "telephone call" includes both voice calls and text message calls, including visual messages.  *Id*. § 304.002(10).

22.     The burden of proof lies on Defendant to show it registered each business location to prove its licensure or on proving an exemption.  *Id*. § 302.051.

23.     The sale of roofing is not a product or service for which there is an exemption to the Code. *Id*. § 302.051.

24.     Defendant is not registered with the Texas Secretary of State as required by the Business and Commerce Code. *Telephone Solicitors Search*, TEXAS SECRETARY OF STATE, https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp (querying Defendant as either a DBA or seller name returns no results).

**Factual Allegations**

25.     The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

26.     Defendant Iron Hammer Roofing LLC is engaged in the business of providing residential and commercial exterior construction services such as roof replacement and repair.

27. To generate business, Defendant places illegal telemarketing calls to consumers, ~~including calls initiated using prerecorded or artificial voice technology~~.

28. Plaintiff's residential telephone number is a personal residential telephone number.

29. The telephone number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

30. Plaintiff uses the telephone number for personal, residential, and household purposes.

31. Plaintiff has never been a customer of Defendant, never did business with Defendant, and never asked or inquired to be a customer of Defendant.

32. Plaintiff's telephone number is (817) xxx-xxxx and has been listed on the National Do Not Call Registry since more than 31 days prior to the calls at issue.

33. Plaintiff never consented to receive telemarketing calls from Defendant.

34. Despite this lack of consent and the number being on the National Do Not Call Registry, Plaintiff received at least two telemarketing calls within a 12-month period.

35. On June 23, 2026, at approximately 10:52 a.m., Plaintiff received a call from telephone number (817) 389-6324.

36. On June 24, at approximately 4:45 p.m., Plaintiff received a call from 817-389-6414.

37. On June 25, 2026, at approximately 6:34 p.m., Plaintiff received a call from 817-389-7328

38. On June 26, Plaintiff received two calls, one from 817-389-6337 and another one from 817-389-6413.

39. On June 27, 2026, at approximately 5:27 p.m., Plaintiff received another call from the same telephone number (817) 389-6324.

40. The caller identified itself as Defendant, Iron Hammer, and solicited Plaintiff to set up an appointment to obtain roofing services.

41. In an effort to confirm who the caller was, an appointment was set up for June 29, 2026.

42. On June 29, Defendant's employee, "Emil" came to Plaintiff's home and did an assessment of Plaintiff's roof.

43. Emil sent Plaintiff photographs of Plaintiff's roof that allegedly needed repairs.

44. The Plaintiff has connected all calls to the same source: two calls bore the exact same fake caller ID, and the other calls to those, since they all spoofed the same exact NPA NXX combination in a short temporal and spatial proximity.

45. A ten thousands block (NPA-NXX-XXXX) contains exactly 10,000 numbers (817-389-0000 through 817-389-9999). All the numbers here fall squarely in it. There are roughly 5.5 to 6 billion assigned or assignable 10-digit U.S. telephone numbers across all valid NPA-NXX combinations. A "spoofer" picking numbers at random to impersonate thus has an enormous pool to draw from. Thus, the probability that two independent, unrelated bad actors would each independently land in the same ten thousands number block, which represents roughly 0.000167% of the available number space, by coincidence, let alone "spoof" the exact same caller ID, is: $P = 1/600,000$, or roughly one in six million. The probability that two independent spoofers would randomly select the exact same caller ID is smaller still:

approximately one chance in 6 billion. One has a greater chance of being struck by lightning, which has a probability of approximately 1 in 1.5 million.

46.    In practice, an actor spoofing its number simply does not pick a number at random: it chooses a telephone exchange that it knows is unable to receive calls, as described below (such as 817-389-XXXX) and simply change its computer programming code to alter the last four digits in this block, usually sequentially. This makes it easy to pinpoint the same block call to a common origin, and makes coincidence an implausible explanation.

47.    The evidence connecting the calls Plaintiff received from the same 817-389-XXXX numbers is nested. The calls came from the same area code, exchange, and ten thousands block, days apart, from a block that was not legitimately originating traffic. All the caller IDs were false, but false in the same highly specific way.

48.    The calls all came from the following numbers, and transmitted the caller ID, in the form of both CPN and ANI as follows. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | CNAM Avail? | CNAM Result | Carrier of Record |
|---|---|---|---|
| 8173896324 | Y | GODLEY TX | Onvoy |
| 8173896414 | Y | GODLEY TX | Onvoy |
| 8173897328 | Y | GODLEY TX | Onvoy |
| 8173896337 | Y | GODLEY TX | Onvoy |
| 8173896413 | Y | GODLEY TX | Onvoy |

49. As the aforementioned chart shows, the CNAM transmitted by the telephone carrier provided inaccurate CNAM functionality, which did not transmit the caller's name.

50. Onvoy and its downstream providers provide the ability to set the CNAM result accurately to reflect a business or telemarketer's own name as desired, but if the customer does not elect such a CNAM, their default CNAM customer setting is to transmit something other than the caller's name, usually a geographical location, as occurred here.

51. With respect to each number listed above, they do not permit a caller to call the number and lodge a do not call request during regular business hours. It is not possible to call the number back to lodge a Do Not Call request during regular business hours.

52. Nor will anybody texting or calling the number receive an alternate number to call to lodge a Do Not Call request during regular business hours.

53. The aforementioned calls to the Plaintiff were unwanted.

54. The calls were nonconsensual encounters.

55. Plaintiff's privacy has been violated by the above-described telemarketing calls.

56. Plaintiff never provided his consent or requested the calls.

57. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded. They were not provided legally compliant opt out mechanisms. Furthermore, the calls unnecessarily used power, network resources, tied up lines from receiving other calls, and wear and tear.

58. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

**Class Action Statement**

59.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

60.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

61.     Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did  not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Texas Business and Commerce Code Class:** All persons in the State of Texas who (1) received a telephone solicitation call from or on behalf of Defendant, (2) at any time during which Defendant was not registered as telephone solicitors with the Texas Secretary of State, (3) at any time in the period that begins four years before the date of filing this Complaint to trial.

62.     Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

63.     Excluded from the Classes are counsel, Defendant, and any entities in which Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

64. Plaintiff and all members of the Classes have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

65. This Class Action Complaint seeks injunctive relief and money damages.

66. The Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

67. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

68. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

69. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

70. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

71. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a. Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b. Whether Defendant's conduct constitutes a violation of the TCPA; and

c. Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

72.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

73.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

74.     Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents, if any, as discovery may reveal.

75.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

76.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CAUSE OF ACTION
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

77.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

78.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency

purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

79.     Defendant's violations were negligent, willful, or knowing.

80.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

81.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

82.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83.     It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

84.     It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

85.     Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to

Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier, by calling without transmitting CPN or ANI, or by calling while transmitting non-compliant CPN or ANI.

86. These violations were willful or knowing.

87. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

88. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION
**Violations of Texas Business and Commerce Code § 302.101**
**(On Behalf of Plaintiff and the Texas Business and Commerce Code Class)**

89. Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

90. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the Texas Business and Commerce Code, § 302.101, by making telephone solicitation calls, to Plaintiff and members of the Texas Business and Commerce Code Class despite not holding a registration certificate for the business location from which the telephone solicitation is made.

91. Defendant's violations were negligent, willful, or knowing.

92. As a result of Defendant's violations of the Texas Business and Commerce Code, § 302.101, Plaintiff and members of the Texas Business and Commerce Code Class are presumptively entitled to a civil penalty of $5,000 for each violation under § 302.302, plus all

14

reasonable costs of prosecuting the action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.      Injunctive relief prohibiting Defendant from transmitting inaccurate and non-compliant caller ID information in the future;

C.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation;

D.      That the Court enter a judgment awarding Plaintiff and all Texas Business and Commerce Code Class members statutory damages of $5,000 for each violation of the TBCC;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

F.      Damages to Plaintiff and members of the Texas Business and Commerce Code Class pursuant to that statute; and

G.      Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.


RESPECTFULLY SUBMITTED AND DATED this August 10, 2026.


*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and the Proposed Class*

16