**United States District Court**
**Northern District of Texas**
**Dallas Division**

| | |
|---|---|
| R'Kes Starling, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*<br><br>v.<br><br>Iron Hammer Roofing, LLC,<br><br>*Defendant* | Case No. 3:26-cv-02653-S |

# Defendant Iron Hammer Roofing, LLC's Motion to Dismiss and Brief in Support

Defendant Iron Hammer Roofing, LLC ("Iron Hammer") moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Counts 2 and 3 of Plaintiff R'Kes Starling's ("Plaintiff") Class Action Complaint ("Complaint") and his requests for injunctive relief.

## USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to Local Civil Rule 7.2(f), counsel for Iron Hammer discloses that generative artificial intelligence was used as an assistive tool in preparing this brief.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ ii

**SUMMARY** ........ 1

**BACKGROUND** ........ 1

1. The Parties........ 1
2. Plaintiff alleges that Iron Hammer called Plaintiff six times........ 2
3. The Appointment. ........ 2
4. Plaintiff's Claims. ........ 3

**SUMMARY OF ARGUMENT** ........ 3

**STANDARD OF REVIEW** ........ 4

**ARGUMENT** ........ 5

1. The Court should dismiss Plaintiff's second cause of action because there is no private right of action under 47 C.F.R. § 64.1601(e). ........ 5
2. Plaintiff does not have standing to seek injunctive relief because the calls have stopped. ........ 9
3. Plaintiff's third cause of action under Texas Business and Commerce Code § 302.101 should be dismissed. ........ 11
   - 3.1. Plaintiff has failed to plead a telephone solicitation that could support a cause of action under Chapter 302. ........ 11
   - 3.2. Plaintiff is not a "consumer" entitled to enforce Chapter 302. ........ 13

**CONCLUSION** ........ 13

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ........ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 5, 11

*Atkinson v. Pro Custom Solar LLC*,
No. SA-21-CV-00178-OLG, 2022 WL 4071998 (W.D. Tex. Sept. 1, 2022) ........ 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4, 5, 11

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) ........ 6

*Cunningham v. Daybreak Solar Power, LLC*,
No. 4:22-CV-00599-O, 2023 WL 12253851 (N.D. Tex. Jan. 30, 2023) ........ 10, 11

*Davis v. Mich. Dep't of Treasury*,
489 U.S. 803 (1989) ........ 7

*Dobronski v. Fam. First Life, LLC*,
No. 2:22-CV-12039, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024), *report and recommendation adopted in part, rejected in part*, No. 22-CV-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024) ........ 9

*Dobronski v. Selectquote Ins. Servs.*,
462 F. Supp. 3d 784 (E.D. Mich. 2020) ........ 9

*Dobronski v. SunPath Ltd.*,
No. 19-13094, 2020 WL 8840311 (E.D. Mich. July 27, 2020) ........ 9

*Dobronski v. Tobias & Assocs., Inc.*,
No. 23-10331, 2024 WL 1174553 (E.D. Mich. Mar. 18, 2024) ........ 9

*Dobronski v. Total Ins. Brokers, LLC*,
No. 21-10035, 2021 WL 4452218 (E.D. Mich. Sept. 29, 2021) ........ 9

*Dobronski v. Transamerica Life Ins. Co.*,
347 Mich. App. 92 (2023) ........................................ 9

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ........................................ 6

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ........................................ 7

*FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*,
608 U.S. 608 (2026) ........................................ 5, 6

*Griffin v. Am.-Amicable Life Ins. Co. of Tex.*,
No. 6:24-CV-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024) ........................................ 8

*Holeman v. Landmark Chevrolet Corp.*, 989 S.W.2d 395
(Tex. App.—Houston [14th Dist.] 1999, pet. denied) ........................................ 13

*Martin v. Lou Poliquin Enters., Inc.*,
696 S.W.2d 180 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) ........................................ 13

*Meyer v. Cap. All. Grp.*,
No. 15-CV-2405-WVG, 2017 WL 5138316 (S.D. Cal. Nov. 6, 2017) ........................................ 9

*Ortega v. Freedom Solar Servs.*,
No. SA-24-CV-00662-FB, 2026 WL 2028932 (W.D. Tex. May 15, 2026), *report and recommendation adopted*, No. SA-24-CA-0662-FB, 2026 WL 2023003 (W.D. Tex. July 13, 2026) ........................................ 10, 11

*Owens v. Adroit Health Grp., LLC*,
No. 1:24-CV-547, 2025 WL 3777898 (W.D. Mich. Mar. 4, 2025) ........................................ 8

*Price v. Transamerica Life Ins. Co.*,
No. 3:25-CV-3231, 2026 WL 1200848 (N.D. Tex. Apr. 13, 2026), *report and recommendation adopted*, No. 3:25-CV-3231-S-BN, 2026 WL 1198226 (N.D. Tex. Apr. 30, 2026) ........................................ 7

*Stringer v. Whitley*,
942 F.3d 715 (5th Cir. 2019) ........................................ 9

*Thurman v. Med. Transp. Mgmt., Inc.*,
982 F.3d 953 (5th Cir. 2020) ........................................ 5

*Worsham v. Direct Energy Servs., LLC*,
No. CV SAG-20-00193, 2021 WL 948819 (D. Md. Mar. 12, 2021), *aff'd*, No. 21-1677, 2022 WL 1261998 (4th Cir. Apr. 28, 2022) ........ 9

*Worsham v. Travel Options, Inc.*,
No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017) ........ 9

## Statutes

47 U.S.C. § 227 ........ 3, 6, 7

Tex. Bus. & Com. Code § 17.45 ........ 13

Tex. Bus. & Com. Code § 17.50 ........ 13

Tex. Bus. & Com. Code § 302.001 ........ 11

Tex. Bus. & Com. Code § 302.059 ........ 12

Tex. Bus. & Com. Code § 302.101 ........ 3, 11

Tex. Bus. & Com. Code § 302.303 ........ 13

## Other Authorities

47 C.F.R. § 64.1200 ........ 3, 7

47 C.F.R. § 64.1601 ........ passim

47 C.F.R. pt. 64, subpt. L ........ 8

47 C.F.R. pt. 64, subpt. P ........ 8

Calling Number Identification, 56 Fed. Reg. 57,300 (proposed Nov. 8, 1991) (to be codified at 47 C.F.R. pt. 64) ........ 8

Calling Number Identification, 59 Fed. Reg. 18,318 (Apr. 18, 1994) (codified at 47 C.F.R. pt. 64, subpt. P) ........ 8

Fed. R. Civ. P. 12 ........ passim

Fed. R. Civ. P. 8 ........ 4

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
18 FCC Rcd. 14014 (2003) .......................................... 7, 8

## SUMMARY

This putative class action arises from six telephone calls about roofing services. Plaintiff R'Kes Starling alleges that he received six calls over five days in June 2026. On one of those calls, a caller allegedly identified himself as a representative of Iron Hammer. Plaintiff then set an appointment with the caller to learn who had called. On those facts, Plaintiff sues for himself and three putative classes under the do-not-call rule of the Telephone Consumer Protection Act ("TCPA") (Count 1), the Federal Communications Commission's ("FCC") caller ID rule (Count 2), and the Texas telephone-solicitor registration statute (Count 3), and he seeks damages and two injunctions.

Through this motion, Iron Hammer moves to dismiss Count 2, Count 3, and the requests for injunctive relief. Count 2 fails because there is no private right of action to enforce the caller ID rule. Plaintiff lacks standing to seek an injunction because he alleges no call after June 2026. And Count 3 fails because Plaintiff does not plead a telephone solicitation, and even if he had, Plaintiff is not a consumer entitled to recover. Accordingly, Iron Hammer respectfully requests that the Court dismiss Counts 2 and 3 under Rule 12(b)(6) and the requests for injunctive relief under Rule 12(b)(1).

## BACKGROUND

### 1. The Parties.

Defendant Iron Hammer is a roofing contractor based in Dallas. It repairs and replaces roofs and provides exterior construction services for homes and businesses.[1] Plaintiff R'Kes Starling lives in Texas.[2] He alleges that his residential telephone number had been on the National Do Not Call Registry for more than 31 days before the calls.[3] Plaintiff alleges that he has never been Iron Hammer's customer or done business with Iron Hammer.[4]

---

[1] Dkt. No. 1, Pl.'s Class Action Compl. ¶¶ 9, 26.

[2] *Id.* ¶ 8.

[3] *Id.* ¶¶ 28–30, 32.

[4] *Id.* ¶ 31.

**2. Plaintiff alleges that Iron Hammer called Plaintiff six times.**

Plaintiff alleges that Iron Hammer called Plaintiff six times between June 23 and June 27, 2026.[5] For five of those calls, Plaintiff does not describe the content of the call. For the remaining call, Plaintiff alleges that one caller identified himself as calling on behalf of Iron Hammer and asked to set an appointment for roofing services.[6] But he does not allege that the caller ever quoted a price, described the work, or asked him to buy anything.[7] The Complaint does not say which of the six calls that was.

Plaintiff alleges that every number was spoofed, meaning the caller displayed a number that was not its own.[8] He alleges that "[a]ll the caller IDs were false" and came from a block of numbers "that was not legitimately originating traffic."[9] He ties the calls to one another by their shared area code, exchange, and number block, and by the one repeated number.[10]

**3. The Appointment.**

Plaintiff set up an appointment with the caller for June 29, 2026.[11] He alleges that he did so "[i]n an effort to confirm who the caller was."[12] On June 29, an Iron Hammer employee named "Emil" came to Plaintiff's home and assessed his roof.[13] Emil then sent Plaintiff photographs of parts of the roof that "allegedly needed repairs."[14]

---

5 *Id.* ¶¶ 35–39.

6 *Id.* ¶ 40.

7 *See id.*

8 *Id.* ¶¶ 44, 46–47.

9 *Id.* ¶ 47.

10 *Id.* ¶¶ 44–47.

11 *Id.* ¶ 41.

12 *Id.*

13 *Id.* ¶ 42.

14 *Id.* ¶ 43.

The Complaint does not allege that Plaintiff wanted roofing work, that he could pay for it, or even that he wanted to buy anything from Iron Hammer. Plaintiff does not allege that either he or the class still receives calls. Nonetheless, Plaintiff filed suit six weeks later, on August 10, 2026.[15]

**4. Plaintiff's Claims.**

Plaintiff brings three counts on behalf of himself and three putative classes.[16] Count 1 alleges that the calls violated the FCC's do-not-call registry rule and seeks damages under the TCPA's private right of action.[17] Count 2 alleges that the calls violated the FCC's caller ID rule.[18] It alleges three kinds of violations: calls without the telemarketer's name, calls without a calling number or with a noncompliant one, and calls from numbers that did not permit a do-not-call request during business hours.[19] Count 3 alleges that Iron Hammer made telephone solicitations without registering with the Texas Secretary of State.[20] For Count 3, Plaintiff seeks $5,000 for each call.[21]

Plaintiff also seeks two injunctions. One would bar Iron Hammer from calling numbers on the registry, and the other would bar it from transmitting "inaccurate and non-compliant caller ID information."[22]

## SUMMARY OF ARGUMENT

The Court should dismiss Count 2, Plaintiff's requests for injunctive relief, and Count 3.

First, Count 2 fails because Plaintiff does not have a private right of action to enforce the FCC's caller ID rule. The TCPA's private right of action applies only to regulations that the FCC

---

15 *See id.* at 16.

16 *Id.* ¶¶ 60–61, 77–92.

17 *Id.* ¶¶ 77–81 (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)).

18 *Id.* ¶¶ 82–88 (citing 47 C.F.R. § 64.1601(e)).

19 *Id.* ¶¶ 83–85.

20 *Id.* ¶¶ 20, 24, 89–92 (citing Tex. Bus. & Com. Code § 302.101).

21 *Id.* ¶ 92 & Prayer ¶ D.

22 *Id.* Prayer ¶¶ A–B; *see id.* ¶¶ 65, 81, 87.

prescribed under the TCPA's do-not-call subsection. The caller ID rule's text, structure, and history all show that the FCC did not prescribe it under that subsection.

Second, Plaintiff lacks standing to seek an injunction. Injunctions can only remedy an ongoing injury or a substantial risk of future injury. Plaintiff does not allege either. He alleges six calls over five days in June 2026. Plaintiff does not allege that calls to him or the putative class continue to this day or that there is a danger of future calls occurring. The Court should therefore dismiss his requests for injunctive relief under Rule 12(b)(1).

Third, Count 3 fails for two reasons. To begin with, Plaintiff fails to plead an actionable telephone solicitation. The Complaint does not describe the content of five of the calls, and Chapter 302 exempts calls that arrange a face-to-face sales meeting. And even if Plaintiff had pled a telephone solicitation, his cause of action would still fail because he is not a consumer entitled to recover.

## STANDARD OF REVIEW

Rule 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[23] Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[24] If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."[25]

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[23] Fed. R. Civ. P. 8(a)(2).

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[25] Fed. R. Civ. P. 12(b)(6).

[26] *Twombly*, 550 U.S. at 570.

defendant is liable for the misconduct alleged."[27] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[28] "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[29] A court may not accept legal conclusions as true.[30] When well-pleaded factual allegations are present, a court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief.[31]

## ARGUMENT

### 1. The Court should dismiss Plaintiff's second cause of action because there is no private right of action under 47 C.F.R. § 64.1601(e).

Only Congress can create a private right of action.[32] An agency cannot create one through regulation.[33] Nor can a court, which looks to "the statute's text and structure" instead of supplying remedies to serve a statute's purpose.[34] A private suit, therefore, can only enforce a regulation if the statute it was prescribed under creates a private right of action.[35]

Count 2 seeks to enforce a regulation, 47 C.F.R. § 64.1601(e).[36] That regulation requires anyone who engages in telemarketing to transmit certain caller identification information.[37] But it does not itself provide for a private right of action. Plaintiff contends that it is enforceable under

---

27 *Iqbal*, 556 U.S. at 678.

28 *Id.* (quoting *Twombly*, 550 U.S. at 556).

29 *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

30 *Id.* at 678–79.

31 *Id.*

32 *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).

33 *Id.* at 291; *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 955–57 (5th Cir. 2020).

34 *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 608 U.S. 608, 614 (2026).

35 *Sandoval*, 532 U.S. at 291 (a regulation "may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not").

36 *See* Compl. ¶¶ 82–88.

37 47 C.F.R. § 64.1601(e)(1).

the TCPA, 47 U.S.C. § 227.[38] Section 227 creates a private right of action in two places: § 227(b)(3) and § 227(c)(5). Plaintiff does not invoke § 227(b)(3); he invokes only § 227(c)(5).[39]

Section 227(c)(5) gives a right of action to a person who received more than one call in 12 months "by or on behalf of the same entity in violation of the regulations prescribed under this subsection."[40] "This subsection" means subsection (c), which directs the FCC to protect residential subscribers' privacy and produced the do-not-call rules.[41] Plaintiff's second cause of action, thus, states a claim only if the FCC prescribed 47 C.F.R. § 64.1601(e) under § 227(c).

To determine whether the FCC prescribed the rule under § 227(c), the Court looks to text, structure, and history.[42] Here, each of those weighs against finding that the FCC prescribed the rule under § 227(c).

First, the rule's text weighs against its having been prescribed under § 227(c). A rule's "scope cannot exceed the power granted" by the provision it rests on.[43] Rules that exceed a provision's scope indicate that the agency was relying on some other authority.[44] And here, § 227(c) is narrower than the rule.[45]

Section 227(c) protects residential telephone subscribers from "telephone solicitations."[46] A "telephone solicitation" is a call or message "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."[47] But the term "does not include a call or message … to any person with whom the caller has an established business relationship."[48] The

---

38 Compl. ¶¶ 19, 87–88.

39 *Id.*

40 47 U.S.C. § 227(c)(5).

41 *Id.* § 227(c)(1)–(3).

42 *See FS Credit*, 608 U.S. at 614 (examining a statute's "text and structure").

43 *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214 (1976).

44 *Chrysler Corp. v. Brown*, 441 U.S. 281, 304–06 (1979).

45 *Compare* 47 U.S.C. § 227(a)(4), (c)(1), *with* 47 C.F.R. § 64.1601(e).

46 47 U.S.C. § 227(c)(1).

47 *Id.* § 227(a)(4).

48 *Id.*

rule, however, is broader. It reaches telemarketing calls to "any person," including calls to existing customers.[49] That mismatch suggests that the FCC was not acting under § 227(c) when it adopted the rule.

Second, the structure of the statute and of the FCC's rules points the same way. The words of a statute "must be read in their context and with a view to their place in the overall statutory scheme."[50] Congress placed do-not-call and caller ID in different subsections, suggesting that § 227(c), and its private right of action, does not cover caller ID. Section 227(c) addresses unwanted sales calls; the rule, by contrast, addresses the accuracy of caller ID information.[51] Section 227(c) directs the FCC to protect residential subscribers from telephone solicitations they object to.[52] And it authorizes a national do-not-call database as one way to do that.[53] Section 227(c), which provides a private right of action, never mentions caller ID.

But when Congress addressed caller ID, it did so in a separate subsection, § 227(e), which prohibits misleading or inaccurate caller ID.[54] That subsection does not give private plaintiffs a right to sue, as this Court has held.[55] Instead, it leaves enforcement to the government: the FCC may impose penalties, and state officials may sue on behalf of their residents.[56]

Like Congress, the FCC put the do-not-call and caller ID rules in separate places. The do-not-call rules are in § 64.1200, in a subpart titled "Restrictions on Telemarketing, Telephone

---

[49] 47 C.F.R. §§ 64.1601(e), 64.1200(f)(13); *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14124 ¶ 184 (2003) [*hereinafter* 2003 Order].

[50] *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

[51] 47 U.S.C. § 227(c).

[52] *Id.* § 227(c)(1)–(2).

[53] *Id.* § 227(c)(3).

[54] *Id.* § 227(e)(1).

[55] *Price v. Transamerica Life Ins. Co.*, No. 3:25-CV-3231, 2026 WL 1200848, at *5–6 (N.D. Tex. Apr. 13, 2026), *report and recommendation adopted*, No. 3:25-CV-3231-S-BN, 2026 WL 1198226 (N.D. Tex. Apr. 30, 2026).

[56] 47 U.S.C. § 227(e)(5)–(6).

Solicitation, and Facsimile Advertising."[57] The caller ID rule is in § 64.1601, in a different subpart, titled "Calling Party Telephone Number; Privacy," which sets rules for how telephone companies transmit caller ID.[58] And the FCC created that subpart in 1994 under its general authority over telephone companies, in a proceeding that began before Congress enacted the TCPA.[59] Because both Congress and the FCC split up caller ID and do-not-call, the structure of the statute and of the FCC's rules indicates that the FCC did not prescribe the caller ID rule under § 227(c).

Third, the rule's history shows that the FCC did not prescribe § 64.1601(e) under § 227(c). The FCC adopted the caller ID rules in § 64.1601(e) in a 2003 Order.[60] The Order's caller ID discussion does not cite § 227 at all, much less specifically reference § 227(c).[61] And the FCC knew how to reference that subsection—it did so 54 times in its Order. For example, the FCC adopted its do-not-call registry "[p]ursuant to [its] authority under section 227(c)."[62]

The rule's text, structure, and history thus all point the same way: the FCC did not prescribe the caller ID rule under § 227(c). The rule's text extends beyond § 227(c). Congress and the FCC each kept caller ID separate from the do-not-call list. And the FCC did not cite § 227(c) when it discussed the rule or in its ordering clause. Because § 227(c)(5)'s private right of action reaches only regulations prescribed under § 227(c), and 47 C.F.R. § 64.1601(e) was not, Plaintiff cannot sue Iron Hammer for allegedly violating it. Many courts have accordingly held that § 64.1601(e) carries no private right of action.[63] Iron Hammer asks the Court to do the same and dismiss Plaintiff's second cause of action.

---

[57] 47 C.F.R. pt. 64, subpt. L (2026).

[58] *Id.* pt. 64, subpt. P; *id.* § 64.1601(a)–(d).

[59] Calling Number Identification, 59 Fed. Reg. 18,318, 18,318–19 (Apr. 18, 1994) (codified at 47 C.F.R. pt. 64, subpt. P); Calling Number Identification, 56 Fed. Reg. 57,300, 57,300 (proposed Nov. 8, 1991).

[60] *See* 2003 Order, 18 FCC Rcd. at 14118–24 ¶¶ 173–84.

[61] *Id.*

[62] *Id.* at 14034 ¶ 28.

[63] *Owens v. Adroit Health Grp., LLC,* No. 1:24-CV-547, 2025 WL 3777898, at *6 (W.D. Mich. Mar. 4, 2025); *Griffin v. Am.-Amicable Life Ins. Co. of Tex.,* No. 6:24-CV-00243-MC, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024); *Dobronski v. Tobias & Assocs., Inc.,* No. 23-10331, 2024

### 2. Plaintiff does not have standing to seek injunctive relief because the calls have stopped.

The Court should dismiss Plaintiff's requests for injunctive relief under Rule 12(b)(1) because he lacks standing. An injunction "cannot conceivably remedy any past wrong"; it can redress only a continuing or threatened future injury.[64] That injury, like any injury supporting Article III standing, must be an injury in fact.[65] A threatened future injury is an injury in fact only if it is "(1) potentially suffered by the plaintiff, not someone else; (2) concrete and particularized, not abstract; and (3) actual or imminent, not conjectural or hypothetical."[66] The imminence requirement ensures "that the alleged injury is not too speculative for Article III purposes."[67] For a threatened injury to be imminent, there must be at least a "substantial risk" that it will occur.[68] It is not enough that an injunction would stop the defendant from repeating past conduct, because that "is always true when a plaintiff seeks an injunction prohibiting a defendant from repeating an action that injured the plaintiff in the past."[69]

---

WL 1174553, at *5 (E.D. Mich. Mar. 18, 2024); *Dobronski v. Fam. First Life, LLC,* No. 2:22-CV-12039, 2024 WL 575858, at *18 (E.D. Mich. Jan. 19, 2024), *report and recommendation adopted in part, rejected in part,* No. 22-CV-12039, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024); *Dobronski v. Total Ins. Brokers, LLC,* No. 21-10035, 2021 WL 4452218, at *3 (E.D. Mich. Sept. 29, 2021); *Worsham v. Direct Energy Servs., LLC,* No. CV SAG-20-00193, 2021 WL 948819, at *3 (D. Md. Mar. 12, 2021), *aff'd,* No. 21-1677, 2022 WL 1261998 (4th Cir. Apr. 28, 2022); *Dobronski v. SunPath Ltd.,* No. 19-13094, 2020 WL 8840311, at *6–7 (E.D. Mich. July 27, 2020); *Dobronski v. Selectquote Ins. Servs.,* 462 F. Supp. 3d 784, 790 (E.D. Mich. 2020); *Meyer v. Cap. All. Grp.,* No. 15-CV-2405-WVG, 2017 WL 5138316, at *16–17 (S.D. Cal. Nov. 6, 2017); *Worsham v. Travel Options, Inc.,* No. JKB-14-2749, 2016 WL 4592373, at *4, *7 (D. Md. Sept. 2, 2016), *aff'd,* 678 F. App'x 165 (4th Cir. 2017); *Dobronski v. Transamerica Life Ins. Co.,* 347 Mich. App. 92, 112–15 (2023).

64 *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (internal quotation marks omitted).

65 *Id.*

66 *Id.* at 720–21 (internal quotation marks and footnotes omitted).

67 *Id.* at 721 (internal quotation marks omitted).

68 *Id.* (internal quotation marks omitted).

69 *Id.* at 721.

In *Cunningham*, for example, the court held that a TCPA plaintiff lacked standing to seek an injunction.[70] The plaintiff received one prerecorded call from the defendant and filed a putative class action seeking damages and an injunction.[71] But because the plaintiff did not allege that he or anyone in the class continued to receive calls, the court dismissed the plaintiff's claims for injunctive relief under Rule 12(b)(1), reasoning that the plaintiff "fail[ed] to plead a continuing injury or threat of future harm should the injunctive relief not be granted."[72]

*Ortega* applied the same rule to a plaintiff who alleged two calls and described them as part of a "campaign."[73] Although the plaintiff alleged "ongoing harassment that continues to this day," the court found that the plaintiff "fail[ed] to demonstrate a substantial risk that [the plaintiff would] continue receiving unsolicited calls from Defendant."[74] The court reasoned that the plaintiff alleged only the two calls to himself and "ma[de] no reference to ongoing calls or other harm."[75]

The same is true here. Plaintiff seeks injunctions against calling numbers on the National Do Not Call Registry and against transmitting noncompliant caller ID "in the future."[76] But like the plaintiffs in *Cunningham* and *Ortega*, Plaintiff fails to allege any calls after the ones he sued over, the last of which occurred on June 27, 2026—more than six weeks before he filed suit on August 10, 2026.[77] And like those plaintiffs, he does not allege that he or anyone else continues to

---

70 *Cunningham v. Daybreak Solar Power, LLC*, No. 4:22-CV-00599-O, 2023 WL 12253851, at *1, *3 (N.D. Tex. Jan. 30, 2023).

71 *Id.*

72 *Id.* at *3.

73 *Ortega v. Freedom Solar Servs.*, No. SA-24-CV-00662-FB, 2026 WL 2028932, at *3 (W.D. Tex. May 15, 2026) (internal quotation marks omitted), *report and recommendation adopted*, No. SA-24-CA-0662-FB, 2026 WL 2023003 (W.D. Tex. July 13, 2026).

74 *Id.* (internal quotation marks omitted).

75 *Id.*

76 Compl. ¶¶ 65, 81, 87 & Prayer ¶¶ A–B.

77 *Id.* ¶¶ 35–39.

receive calls.[78] As a result, this Court, like the courts in *Cunningham* and *Ortega*, should dismiss Plaintiff's requests for injunctive relief for lack of standing.[79]

### 3. Plaintiff's third cause of action under Texas Business and Commerce Code § 302.101 should be dismissed.

Count 3 alleges that Iron Hammer's calls to Plaintiff violated Texas Business and Commerce Code § 302.101 because Iron Hammer lacked a valid registration certificate.[80] The Court should dismiss this cause of action for two reasons. First, Plaintiff failed to plead an actionable "telephone solicitation" under Chapter 302. Second, even if Plaintiff had pled an actionable "telephone solicitation," Plaintiff is not a "consumer" entitled to sue.

#### 3.1. Plaintiff has failed to plead a telephone solicitation that could support a cause of action under Chapter 302.

Plaintiff has failed to plead a valid claim under Texas Business and Commerce Code § 302.101 because he does not allege an actionable "telephone solicitation." Plaintiff must support each element of his cause of action with plausible facts.[81] To have a valid cause of action under Chapter 302, Plaintiff must show that Iron Hammer engaged in a "telephone solicitation" without a valid registration certificate.[82] A "telephone solicitation," in turn, is a call "initiated by a seller or salesperson to induce a person to purchase, rent, claim, or receive an item."[83]

For five of the six calls Plaintiff alleges, he has failed to plead that they are actionable telephone solicitations under Chapter 302. Specifically, Plaintiff does not allege anything about those calls' content, much less facts that show that they were calls that a seller initiated to induce him to purchase an item. Instead, he alleges only their dates and calling numbers.[84] Because five of the six

---

78 *See id.* ¶¶ 35–43.

79 *See Cunningham*, 2023 WL 12253851, at *3; *Ortega*, 2026 WL 2028932, at *3.

80 Compl. ¶¶ 89–92.

81 *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

82 TEX. BUS. & COM. CODE § 302.101(a).

83 *Id.* § 302.001(7).

84 Compl. ¶¶ 35–39.

calls that Plaintiff alleges fail to meet the statutory definition for "telephone solicitation," his third cause of action should be dismissed as to those calls.

The remaining call falls into an exemption from Chapter 302's prohibition on telephone solicitations without a registration certificate. That requirement does not apply to a seller who does not intend to complete a sale during the call, does not make a major sales presentation during the call but arranges for one to be made face-to-face at a later meeting, and does not send anyone to collect payment or deliver an item directly after the call.[85] In *Atkinson*, for example, the magistrate judge recommended that the court dismiss a Chapter 302 cause of action when the call "d[id] not reflect any attempt by [the defendant] to complete a sale," but rather an attempt to "generate interest in the product for the purpose of scheduling an in-person sales meeting."[86]

The same is true here. Like the call in *Atkinson*, the one call Plaintiff describes sought only an in-person appointment.[87] Plaintiff does not allege that Iron Hammer attempted to close a sale over the phone. Plaintiff does not allege that Iron Hammer quoted a price, described the work, or asked him to buy anything.[88] Instead, as in *Atkinson*, the caller sought only to schedule an in-person sales meeting, at which an Iron Hammer employee assessed the roof at Plaintiff's home and sent him photographs of proposed repairs to the roof.[89] Plaintiff does not allege that anyone came to his home to collect payment or deliver an item; the only visit he alleges was a roof assessment.[90] Accordingly, as in *Atkinson*, the face-to-face exemption applies to the remaining call, and it cannot support a cause of action under Chapter 302.

---

85 TEX. BUS. & COM. CODE § 302.059.

86 *Atkinson v. Pro Custom Solar LLC,* No. SA-21-CV-00178-OLG, 2022 WL 4071998, at *9 (W.D. Tex. Sept. 1, 2022).

87 Compl. ¶¶ 40–43.

88 *Id.* ¶ 40.

89 *Id.* ¶¶ 42–43.

90 *Id.*

### 3.2. Plaintiff is not a "consumer" entitled to enforce Chapter 302.

Even if Plaintiff's third cause of action pled a covered telephone solicitation, it should be dismissed because Plaintiff is not a consumer. Chapter 302 does not have a private right of action of its own. Instead, it makes a violation of Chapter 302 a "false, misleading, or deceptive act or practice" under the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA").[91] Only a "consumer" can enforce the DTPA's private right of action.[92] To be a "consumer" under the DTPA, the plaintiff must be one who "seeks or acquires by purchase or lease, any goods or services."[93] To qualify as one who "seeks" goods or services, a person who has not made a purchase must have "in good faith initiate[d] the purchasing process" by presenting himself "as a willing buyer with the subjective intent or specific 'objective' of purchasing" and with "credible indicia of the capacity to consummate the transaction."[94]

Plaintiff has not done so here. Plaintiff "never asked or inquired to be a customer of Defendant."[95] The appointment was only set up "to confirm who the caller was."[96] And Plaintiff does not allege that he wanted roofing work, could pay for it, or sought to buy anything in good faith. Accordingly, Plaintiff's third cause of action should be dismissed because Plaintiff is not a consumer entitled to sue under the DTPA.

## CONCLUSION

For these reasons, Iron Hammer respectfully requests that the Court dismiss Counts 2 and 3 of the Complaint under Rule 12(b)(6), dismiss Plaintiff's requests for injunctive relief under Rule 12(b)(1), and grant Iron Hammer all other relief to which it is entitled.

---

91 TEX. BUS. & COM. CODE § 302.303(a).

92 *Id.* § 17.50(a).

93 *Id.* § 17.45(4).

94 *Holeman v. Landmark Chevrolet Corp.,* 989 S.W.2d 395, 399 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Martin v. Lou Poliquin Enters., Inc.,* 696 S.W.2d 180, 185 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

95 Compl. ¶ 31.

96 *Id.* ¶ 41.

November 12, 2026

Respectfully submitted,

**GRIFFITH BARBEE PLLC**

/s/ *Casey Griffith*

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com

Ellie Johnson
Texas Bar No. 24143054
Ellie.Johnson@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 910
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax

**Counsel for Defendant**

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was filed electronically through the Court's CM/ECF system, which served it on all counsel of record under Federal Rule of Civil Procedure 5(b)(2)(E), on November 12, 2026.

/s/ *Casey Griffith*

Casey Griffith